IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: § | | |
| § | Case No. 15-60007 | |
| WINLAND OCEAN SHIPPING § | (Jointly Administered) | |
| CORPORATION, et al., § | | |
| § | Chapter 11 | |
| Debtors. § | | |
| § | | |
| WON LEE SHIPPING CO., LTD. (HK), § | | |
| § | | |
| Plaintiff, § | | |
| § | Adversary Proceeding | |
| vs. § | | |
| § | Case No. 15-06005 | |
| CHINA MERCHANTS BANK CO., LTD. § | | |
| § | | |
| Defendant. § | | |

**PLAINTIFF'S RESPONSE TO CHINA MERCHANTS BANK CO.'S MOTION TO DISMISS COMPLAINT TO COMPEL TURNOVER AND FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Won Lee Shipping Co. Ltd. (HK), debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy proceeding ("Plaintiff"), and files this Response to Defendant China Merchants Bank Co.'s ("Defendant") Motion to Dismiss Complaint to Compel Turnover and for Preliminary and Permanent Injunctive Relief Pursuant to Federal Rule of Civil Procedure 12(b) ("Motion"). In support thereof, Plaintiff respectfully shows as follows:

**I. PRELIMINARY STATEMENT**

1. On or about September 9, 2014, the "M.V. Rui Lee" (the "Vessel") was arrested in Singapore pursuant to a Warrant of Arrest issued before the Plaintiff filed its voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code ("Bankruptcy Code")

on February 12, 2015 ("Petition Date").  The Warrant of Arrest issued in *Milestone Shipping S.A. v. Owner of the Vessel Rui Lee,* Case No. ADM 103/2014 ("Milestone Action").  On September 11, 2014, Defendant intervened in the Milestone Action.  Plaintiff has since settled all disputes with Milestone regarding this matter.  Though Milestone released its Warrant of Arrest, Defendant filed its own Warrant of Arrest regarding the Vessel. As a result, Defendant is the only party responsible for keeping the Vessel arrested in Singapore.  Only after Defendant would not agree to repeated requests to release the Vessel or at least not impede Plaintiff's efforts to release the Vessel, did Plaintiff, on March 25, 2015, file this adversary action ("Complaint").  On April 7, 2015, Defendant filed its Motion.

  2. The Vessel is Plaintiff's largest asset and essential to Plaintiff's business.[1] Plaintiff seeks: preliminary and permanent injunctions restraining Defendant from exercising control over the Vessel without a Court order; turnover of the Vessel; a determination that Defendant is violating the automatic stay by exercising control over and refusing to return the Vessel; and damages, attorneys' fees, and costs for Defendant's automatic stay violation.

  3. Defendant's Motion is based on four arguments, which can be summarized as follows—though Defendant is the only party requiring the continued arrest of the Vessel, Defendant does not technically have possession, custody, and control of the Vessel because the Vessel is now in the hands of the Admiralty Sheriff in Singapore ("Sheriff").  Plaintiff's response, in summary, is that, at a minimum, Defendant *controls* the Vessel and that this control alone merits the requested turnover relief.  Defendant need only seek the Vessel's release or agree not to impede Plaintiff's efforts to release it.  Moreover, Defendant's failure to seek the

---

[1] While the Plaintiff's only significant asset is the Vessel, related debtors own two other vessels: Winland Dalian Shipping S.A. owns the M.V. Winland Dalian (also under arrest) and Fon Tai Shipping Co., Ltd. owns the M.V. Fon Tai.

2

release of the Vessel or agree not to impede Plaintiff's efforts to have the Vessel released is a willful violation of the automatic stay and supports an award of damages, fees, and costs.

4.  The following facts are undisputed and weigh in favor of denying the Motion—the purpose of the Milestone Action was to have the Sheriff arrest the Vessel; Defendant intervened in the Milestone Action; Milestone has settled all disputes with Plaintiff leaving Defendant as the only party requiring the continued arrest of the Vessel; and, since the Petition Date, Defendant has not filed any pleadings in the Singapore court to withdraw the arrest warrant or the arrest claims. By doing nothing and maintaining the status quo, the Defendant has made no effort to turnover the Vessel and continues to willfully violate the automatic stay.

5.  Section 542(a) and binding Fifth Circuit precedent (articulated in two opinions requiring the turnover of vessels) when applied to these facts support a denial of the Motion. In contrast to the abundance of case law in support of Plaintiff's response, Defendant erroneously ties the fate of its Motion to a *single,* easily distinguishable case from the Eastern District of Texas to support Defendant's claim that Plaintiff did not plead an automatic stay violation. The holding in this 1992 case, however, was not followed by a 2004 Southern District of Texas case that supports the sufficiency of Plaintiff's allegations of an automatic stay violation.

## II. STATEMENT OF FACTS

6.  Plaintiff owns the Vessel and is an individual ship owning company that is engaged in the business of international ocean transportation of bulk cargo. Plaintiff, along with other affiliated entities (referred to collectively as the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") on February 12, 2015 (the "Petition Date"). The Plaintiff and affiliated entities continue to operate their business and manage their property as debtors in possession pursuant to §§ 1107(a) and 1108 of

the Bankruptcy Code.[2] Defendant loaned money to the Debtors, which the Plaintiff used, in part, to purchase the Vessel. Defendant is a China-based commercial bank and does business globally, including with a subsidiary, China Merchants Bank Co., Ltd.- NY, a New York based company. Plaintiff's acquisition of the Vessel was partially financed with funds loaned by the Defendant.

7. Prior to the Petition Date, the Vessel was arrested in Singapore by the Sheriff pursuant to a Warrant of Arrest issued in the Milestone Action. Knowing that the Vessel had been arrested and in an effort to protect its interests, Defendant intervened in the Milestone Action and also filed its own action in Singapore against Plaintiff for failure to make payments when due on the outstanding loan secured by the Vessel, Plaintiff has since settled all disputes with Milestone regarding this matter, and Milestone released its Warrant of Arrest. Defendant then filed its own Warrant of Arrest regarding the Vessel. As a result, Defendant is the only party responsible for keeping the Vessel arrested in Singapore.

8. The Vessel is regularly employed in international trade and calls on ports worldwide. Proceeds from charters of the Vessel are the Plaintiff's primary source of income. As a result of Defendant's arrest of the Vessel, the Vessel is currently laid up in port, losing income and accruing crew fees, arrest fees and other expenses, rather than generating funds that would inure to the benefit of the Plaintiff's estate, creditors, and Defendant. With every day that the Vessel is under arrest in port, Plaintiff misses charter opportunities, which could be generating funds to pay creditors and fund the reorganization process.

9. Only after Defendant refused to take any affirmative steps to cause the release of

---

[2] Additional information regarding Plaintiff, their affiliated debtors, and the circumstances leading up to the Petition Date is available in the Declaration of Robert E. Ogle in Support of Debtors' Chapter 11 Petitions and First Day Pleadings (the "Declaration") (Jointly Administered Case Dkt. No. 4). Capitalized terms not defined herein shall have the meaning used in the Declaration.

the Vessel or to discharge the Vessel from the arrest proceedings did Plaintiff file the Complaint to recover the Vessel.  Through the Complaint, Plaintiff seeks (i) issuance of a preliminary injunction pursuant to §§ 105 and 362(a)(3) restraining Defendant from retaining and/or obtaining possession of property of the estate or exercising control over property of the estate, including without limitation the Vessel; (ii) a permanent injunction restraining Defendant from retaining and/or obtaining possession of property of the estate or exercising control over property of the estate without Court order; (iii) a determination by this Court that Defendant (a) must turn over the Vessel pursuant to § 542(a) and/or § 543(b); and (b) is in violation of the automatic stay by exercising control over and refusing to return the Vessel; (iv) damages for Defendant's violation of the automatic stay and as otherwise deemed appropriate by the Court; and (v) Plaintiff's reasonable and necessary attorneys' fees and costs of suit (Adversary  Dkt. No.  1).

10. On April 7, 2015, Defendant filed its Motion. Defendant first claims that Plaintiff did not adequately allege that Defendant has possession, custody or control over the Vessel, because as a result of the arrest, the Sheriff has possession, custody, and control of the Vessel. Defendant claims it cannot turnover property, under section 542 of the Bankruptcy Code, that Defendant "is not properly alleged to possess."  Second, Defendant argues that Plaintiff has not alleged the Defendant is the custodian of the Vessel as necessary to obtain turnover of the Vessel under section 543.  Third, Defendant claims that Plaintiff's allegation that Defendant has violated the automatic stay is insufficiently pled because Defendant has taken no action since the Petition Date to obtain the property or to take any steps in the legal proceeding before the Singapore Court.  Fourth, Defendant alleges that the adversary complaint should be dismissed because the Plaintiff has failed to join a necessary party, the Sheriff.

## III.  ARGUMENT

### A. Defendant's Control Over the Vessel, Which Defendant Asked to be Arrested and Which Defendant Has the Power to Release, Is Sufficient to Support Plaintiff's Claim for Turnover Pursuant to Section 542(a)

11. Defendant's efforts to absolve itself of responsibility for the Vessel and blame the Sheriff (though it was the Defendant who unleashed the Sheriff by filing the Warrant of Arrest) must fail.  Because the Defendant requested the arrest of the Vessel and can request its release at any time, Defendant retains control of the Vessel and can be subject to a turnover order. Consistent with the facts in this case, the Fifth Circuit has not hesitated to find in favor of the turnover to debtors of vessels arrested pre-petition in two cases discussed more fully below. *In re Louisiana Ship Mgmt., Inc.*, 761 F.2d 1025, 1026 (5th Cir. 1985) (per curiam) (requiring return of arrested vessel to debtor, even after the vessel had been sold but the sale had not been confirmed); *see also In re Modern Boats, Inc.*, 775 F.2d 619 (5th Cir. 1985) (per curiam) (requiring return of arrested vessel to debtor).

12. Since Defendant is the sole, remaining party in the admiralty proceeding advocating for the arrest of the Vessel, it has control over the Vessel.  Thus Plaintiff has stated a claim for turnover under section 542(a) of the Bankruptcy Code.  The plain language of section 542(a) and substantial case law interpreting it, provide that a party with "control" over estate property may be ordered to turn it over:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, *or control*, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a) (emphasis added).  Courts applying section 542(a) have ordered turnover in instances where the party lacked possession or custody over the property but had control

6

over it.[3]

13. Despite the procedural history of the Singapore arrest proceeding, Defendant persists in arguing that it has no control over the Vessel. (Mot. p. 5) Yet Defendant does not dispute the fact that the Sheriff is simply the enforcement officer of the Singapore court and is maintaining the arrest proceeding based on a warrant requested by Defendant. Defendant has control over the Vessel by virtue of the fact that it requested the Vessel's arrest pre-petition, is maintaining the arrest proceeding, and, consistent with general principles of admiralty law, has the power to seek the Vessel's release upon payment or for any other reason. *See, e.g.*, *Chaves v. M/V Medina Star*, 47 F.3d 153, 156-157 (5th Cir. 1995). (acknowledging that arresting party may request release of vessel it participated in arresting).

14. Plaintiff's understanding is that in Singapore all that is required to release an arrested vessel is an application for release, which if not opposed, can be granted in a matter of hours. Since such applications are generally filed by the arresting party, Defendant controls whether the Vessel can be released, and the Sheriff, as the court's enforcement officer, would have no choice but to comply with the order. So far, the only record is that the Sheriff has done exactly what was asked of it in the Milestone Action regarding the two Warrants of Arrest, and there is no reason to believe that the Sheriff would refuse to comply with an order releasing the Vessel.

---

[3] *See, e.g.*, *In re Ruiz*, 455 B.R. 745, 750-751 (B.A.P. 10th Cir. 2011) (finding that, though the debtors subject to the turnover did not have actual possession or custody of the funds in question, they had the power to direct the bank on how or whether to dispose of the funds as well as the ability to close the account, and thus had "control" for turnover purposes); *In re Wolfe*, No. 12-02533-JDP, 2013 WL 1410385 (Bankr. D. Idaho Apr. 8, 2013) (same); *In re Pauls*, No. 10-13887, 2011 WL 6096292 (Bankr. D. Kan. Dec. 5, 2011) (same); *Kontrabecki v. Oliner*, 318 B.R. 175, 182-83 (N.D. Cal. 2004) (holding that turnover is proper where defendant controls third party in possession of estate property such that defendant can arrange for return of property).

15. Since the Petition Date, however, Defendant has made no good faith effort to comply with its obligations under sections 542(a) or 362 of the Bankruptcy Code and seek release of the Vessel in order to return it to Plaintiff.  This lack of effort also evidences Defendant's violation of the automatic stay (discussed below).  Defendant has not filed any pleadings with the Singapore court seeking to dismiss the arrest warrant.  Defendant's conduct is causing significant damage to Plaintiff.  Since the Vessel is Plaintiff's sole means of generating revenue, it is critical that the Vessel be released at the earliest possible opportunity to enable Plaintiff to generate funds to pay creditors and fund the reorganization process.  Not only is the Vessel now idle, to the Plaintiff's detriment, but the Vessel continues to accrue fees, including crew fees, arrest fees, and other expenses.

**B.     Turnover Is Proper Because the Vessel is Property of the Estate and within the Exclusive Jurisdiction of the Bankruptcy Court**

16. Because the Vessel is property of the Debtor's estate and within the exclusive jurisdiction of this Court, Defendant must turn it over to Plaintiff as debtor-in-possession.  11 U.S.C. § 542(a).  The Complaint states a claim for turnover under section 542(a) because the Vessel is unquestionably property of the estate under the exclusive jurisdiction of this Court.  This fact also supports Plaintiff's claims relating to Defendant's automatic stay violations, which is discussed below.

### 1.     A Vessel Arrested Abroad Is Property of the Estate and Subject to Turnover

17. Defendant does not dispute that the Vessel falls within the broad definition of "property of the estate," which is comprised of all the following property, *wherever located*: . . . all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1) (emphasis added); *see also U.S. v. Whiting Pools, Inc.*, 462

U.S. 198, 204-205 (1983)(describing the broad scope of Section 541(a)(1)). Courts have interpreted Section 541(a)(1) to create a "*worldwide estate*."[4] The worldwide estate includes property of the debtor that was seized by a creditor prior to the filing of a petition for reorganization. *Whiting Pools, Inc.*, 462 U.S. at 209. *See also Mitchell v. BankIllinois,* 316 B.R. 891, 896 (S.D. Tex. 2004) (recognizing that "if a secured creditor repossesses the debtor's property prepetition, that property may be included in the estate").

18. Thus, the Vessel arrested in Singapore is part of Plaintiff's worldwide estate. *In re McLean Industries, Inc.*, 68 B.R. 690, 694 (Bkrtcy. S.D.N.Y. 1986) (stating that two vessels arrested in Hong Kong and Singapore are property of the estate, and it does not matter that the vessels were located beyond the territorial borders of the United States); *In re Lykes Bros. S.S. Co., Inc.*, 207 B.R. 282, 284 (Bankr. M.D. Fla. 1997) (stating that the debtor's vessel, which was arrested in a Belgian port, was part of the debtor's estate which was "created upon filing the petition pursuant to § 541(a) of the Bankruptcy Code [and] which consists of property of the debtor *wherever located in the world*") (emphasis added).

19. Under Fifth Circuit law, bankruptcy courts have *exclusive* jurisdiction over vessels arrested before the petition date because such property forms part of the bankruptcy estate, and, as a result, such property must be returned to the debtor upon commencement of the bankruptcy proceedings. *In re Louisiana Ship Mgmt., Inc.*, 761 F.2d at 1026; *see also In re Modern Boats, Inc.*, 775 F.2d at 620. Indeed, the filing of a bankruptcy petition automatically stays the sale of a vessel arrested pre-petition and "vest[s] *exclusive jurisdiction* over the vessel in the court where the Title 11 proceeding was pending, depriving the admiralty court

---

[4] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 474 B.R. 76, 81 (S.D.N.Y. 2012) (citation omitted, emphasis added); *see also Underwood v. Hilliard (In re Rimsat, Ltd.)*, 98 F.3d 956, 961 (7th Cir. 1996) ("The efficacy of the bankruptcy proceeding depends on the court's ability to control and marshal the assets of the debtor wherever located (*see* § 541(a)").

of jurisdiction over it." *Id.* (emphasis added).

20. In both *In re Louisiana Ship Mgmt.* and *In re Modern Boats*, the Fifth Circuit concluded that vessels arrested at the request of creditors (and not in the creditors' possession or custody) must be turned over debtors. In *In re Modern Boats*, a bankruptcy court order which directed the turnover of a vessel was affirmed by the district court for the Eastern District of Louisiana, and an appeal was taken. *In re Modern Boats, Inc.*, 775 F.2d at 619-620. The Fifth Circuit in *In re Modern Boats,* relying on its holding under similar facts in *In re Louisiana Ship Mgmt.,* held that the admiralty court's previous acquisition of in rem jurisdiction over the vessel in a proceeding to enforce a maritime lien did not defeat the bankruptcy court's jurisdiction over the owner's petition of reorganization and affirmed the district court. *In re Modern Boats, Inc.*, 775 F.2d at 619-620.

21. In *In re Louisiana Ship Mgmt.,* a chapter 11 debtor petitioned for mandamus to the district court for the Eastern District of Texas, Beaumont Division. *In re Louisiana Ship Mgmt., Inc.*, 761 F.2d at 1025-1026. The vessel in this case had been seized pre-petition, and the creditor sought the sale of the vessel to satisfy a maritime lien. *Id.* Before the sale, the debtor filed for voluntary chapter 11 bankruptcy, but the ship was still sold. *Id.* However, the sale had not been confirmed pending the Fifth Circuit's action on the petition for an order directing that the sale be declared void and the possession and control of the vessel be restored to its owner. *Id.*

22. The Fifth Circuit held that the filing of a petition under chapter 11 automatically stayed the proposed sale of the debtor's vessel to enforce maritime lien and deprived the admiralty court of jurisdiction over the vessel. *Id.* As a result, the post-petition sale of the vessel was null and void, and the vessel was to be restored to the debtor's possession and control. *Id.*

23. The facts in both *In re Modern Boats,* and *In re Louisiana Ship Mgmt.* are similar to the facts regarding the Vessel. In *In re Louisiana Ship Mgmt.*, the procedural disposition of the admiralty proceeding (where a sale of the arrested vessel had already occurred) was even more advanced than the proceeding regarding the Vessel. In both *In re Modern Boats,* and *In re Louisiana Ship Mgmt.*, the Fifth Circuit determined that turnover of the arrested vessels to the debtors was appropriate. The same Fifth Circuit analysis and holding should apply regarding the Vessel in this case.

      **2.     Because the Vessel Is Property of the Estate within Defendant's Control and under this Court's Jurisdiction, Turnover Is Required**

24. The Bankruptcy Code requires turnover of the Vessel to Plaintiff. Section 542 of the Bankruptcy Code in connection with section 541 requires that any "entity in possession, custody, or control of property of the estate *shall deliver* that property to the trustee." 11 U.S.C. § 542(a) (emphasis added); *Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 75 (2d Cir. 2013). In a chapter 11 bankruptcy, a debtor-in-possession has all the rights and powers, and shall perform all the functions and duties of, a trustee. 11 U.S.C. §1107(a). Therefore, the delivery obligation of section 542(a) contemplates the debtor-in-possession as the recipient of property of the estate. *See* 11 U.S.C. §§ 1107(a), 542(a); *In re Weber*, 719 F.3d at 76. As discussed above, Fifth Circuit law mandates this same result with regard to vessels seized pre-petition and maintained under arrest post-petition. *See, e.g.*, *In re Modern Boats, Inc.*, 775 F.2d 619 (requiring turnover to debtor of vessel arrested pre-petition); *In re Louisiana Ship Mgmt., Inc.*, 761 F.2d 1025 (same). Therefore, pursuant to the Bankruptcy Code, the Vessel should be delivered to Plaintiff for administration through the bankruptcy estate and under the provisions of the Bankruptcy Code. *See* 11 U.S.C. §§ 1107(a), 542(a).

## C. Defendant's Pre-Petition Seizure Maintained Post-Petition Violates the Automatic Stay

25. Defendant's claim that Plaintiff has failed to state an automatic stay violation under section 362 is contrary to case law within the Southern District of Texas and the policies underlying the automatic stay. The District Court for the Southern District of Texas has expressly found that property seized pre-petition and held post-petition gives rise to an automatic stay violation. Thus, Defendant's continued arrest of the Vessel post-petition, the full operation of which is crucial to the Plaintiff's reorganization prospects, violates the automatic stay.

26. The filing of a bankruptcy petition operates to stay any act to obtain possession of property of or from the estate, or to exercise control over property of the estate. 11 U.S.C. § 362(a)(3). The Southern District of Texas adheres to the majority view that a creditor who refuses to turn over a debtor's property seized pre-petition after the debtor demands return violates the automatic stay under section 362(a)(3). *Mitchell*, 316 B.R. at 899-901, (creditor's retention of repossessed vehicle after demand for turnover was violation of the automatic stay); *In re Coats*, 168 B.R. 159, 165 (Bankr. S.D. Tex. 1993) (finding automatic stay violation where county constable refused to release debtor's property seized pre-petition after learning of bankruptcy filing); *accord Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 708 (7th Cir. 2009). This doctrine applies in the context of pending admiralty actions such that "[a] pre-petition maritime lien holder who wants to foreclose must therefore request relief from the stay from the bankruptcy judge." THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 9-9 (5th ed. 2011).

27. Moreover, such violation of the automatic stay is willful where the creditor refuses to turn over the property seized pre-petition with full awareness of the

12

bankruptcy petition. *Mitchell*, 316 B.R. at 901-02; *In re Zaber*, 223 B.R. 102, 104 (Bankr. N.D. Tex. 1998) (recognizing that the 1984 amendments to the Bankruptcy Code broadened the scope of the stay such that "exercise control" in section 362(a)(3) encompasses the acts of a creditor in denying a debtor possession and use of seized property when return of the property has been requested). Relatedly, the automatic stay "automatically enjoin[s] the continuation of any litigation against [the debtors] and automatically enjoin[s] continu[ing] lien enforcement against [the debtors] to enforce a prepetition claim against the debtor." *In re Gold & Honey, Ltd.*, 410 B.R. 357, 368 (Bankr. E.D.N.Y. 2009) (citing 11 U.S.C. § 362(a)(1), (3), (4), (5), and (6)).

28. A creditor may not invoke the sheriff's possession or control as a defense to the creditor's obligation to return the debtor's property in accordance with the automatic stay, and such inaction is a willful violation. *See In re Johnson*, 262 B.R. 831, 847-48 (Bankr. D. Idaho 2001) ("[c]reditors and their counsel are not allowed to sit by and watch the litigation they have commenced proceed by shifting responsibility to local authorities charged with collecting judgments obtained through their efforts. . . . The provisions of the automatic stay place the responsibility to discontinue any pending collection proceedings squarely on the shoulders of the creditor who initiated the action….") (citation omitted, internal quotation marks omitted); *Ledford v. Tiedge (In re Sams)*, 106 B.R. 485, 491 (Bankr. S.D. Ohio 1989) ("The provisions of the automatic stay place the responsibility to discontinue any pending collection proceedings squarely on the shoulders of the creditor who initiated the action.") (citation and internal quotation marks omitted). Thus, Defendant's decision to maintain the Vessel's arrest post-petition constitutes a willful violation of the automatic stay.

29. Cases that have found automatic stay violations based on post-petition vessel arrests lend support for a similar finding here. *See In re Lykes*, 207 B.R. 282, 287 (finding willful violation of automatic stay by arresting party procuring arrest of vessel in Belgium post-petition); *In re McLean Indus., Inc.*, 68 B.R. 690, 694-701 (Bankr. S.D.N.Y. 1986), subsequent proceedings, 79 B.R. 291 (Bankr. S.D.N.Y. 1987) (holding that defendant violated section 362(a)(3) by arresting the debtor's vessels in Hong Kong and Singapore post-petition and assessing a $5,000 a day fine to coerce the defendant to release the vessels). As in *In re McLean Indus.*, the bankruptcy court has the ability to assess significant fines against an arresting party for arresting vessels post-petition, violating the automatic stay, and not taking steps to release the arrested vessels. *Id.*

30. Significantly, Plaintiff's business relies on the operation of its Vessel. The seizure and continued arrest of the Vessel prevents Plaintiff from operating and generating revenues. As the Vessel sits in port unable to work, it is accruing additional liabilities, such as crew fees, arrest fees, and other expenses. Defendant and its control over the Vessel injures the reputation and goodwill of Plaintiff by calling into question Plaintiff's ability to timely deliver cargo and fulfill charter obligations. Accordingly, Defendant's willful violation of the automatic stay should not be condoned by this Court.

31. Defendant cites only one case in support of its turnover and automatic stay arguments. Defendant's reliance on this single case, *In re Richardson*, to support its position that Plaintiff has not properly pled a violation of the automatic stay is misplaced. (Mot. p. 7) In this case, a creditor pre-petition repossessed debtor's vehicle. *In re Richardson,* 135 B.R. 256, 257 (Bankr. E.D. Tex. 1992). The creditor refused to turnover the vehicle, and the debtor filed its motion for contempt and damages. *Id.* The court held that to be a sanctionable violation of

14

the automatic stay, a creditor's exercise of control over the property of the debtor must occur *post-petition* and must involve an affirmative act on the part of the creditor. *In re Richardson,* 135 B.R. at 259. Applying this standard, the court denied the debtor's motion for contempt and damages.

32. The Southern District of Texas did not apply the standard described in *In re Richardson* in either *In re Mitchell* or *In re Burrell*, both of which concerned facts similar to those in *In re Richardson*. The court in *In re Mitchell* affirmed a bankruptcy court's determination that a creditor's retention of a vehicle (that was repossessed *pre-petition*), after two demands for a turnover, was not only a violation of the automatic stay but was a willful stay violation sufficient to support an award of damages and attorney fees. *Mitchell*, 316 B.R. at 901-02; *see also In re Burrell,* 2012 WL 3727130 (S.D. Tex. Aug. 27, 2012)(affirming the bankruptcy court's finding of a willful violation of the automatic stay regarding failure to turnover a vehicle that was repossessed *pre-petition* and affirming an award that included punitive damages and attorney's fees).

**D. The Sheriff is Not a Required Party, and, Even if it Were, Failure to Join a Party Does Not Excuse Defendant's Obligation to Comply with the Stay**

33. The Complaint seeks to compel Defendant to comply with the automatic stay. Defendant's obligation to comply with the stay is unconditional. The fact that other parties may not be joined in the same proceeding or may not comply with their obligations under the automatic stay does not relieve Defendant of its duty to take affirmative action to seek the release of the Vessel or otherwise withdraw its warrant for arrest.

34. Defendant claims that the Sheriff is a required party to the litigation because it purportedly is "the sole party in possession, custody, and control of the Vessel." (Mot. p 8-9)

Defendant argues that an order that requires the Defendant to turnover the Vessel would be "hollow" because it is the Sheriff that possesses the Vessel. *Id.* However, as described above, Defendant in fact has control over the Vessel owing to the Defendant's ability to take action to release the Vessel from the arrest proceedings which it has initiated. The Defendant literally could cause the release of the Vessel in a matter of hours, if it chose to do so. As a result, the relief sought in the Complaint can be afforded here by Defendant. Thus, Defendant's claim that the Sheriff is a required party is incorrect because relief may be accorded among the existing parties. (Mot. p. 10)

35. Finally, an application to release the Vessel will not prejudice the Sheriff. Because of the undertaking given by the Defendant to the Sheriff at the time of the arrest, the Sheriff will look to Defendant for the payment of the Sheriff's commissions and expenses, such as security guard charges. Accordingly, Defendant's argument that Plaintiff has failed to join necessary or indispensable parties is merely a distraction from Defendant's obligations under the Bankruptcy Code and is without merit. As a result, Defendant's Rule 19(b) argument must fail.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny the Motion in its entirety, and award such further relief as the Court deems just and proper. Respectfully submitted this 28th day of April 2015.

**OKIN & ADAMS LLP**

By:     /s/ *Matthew S. Okin*
    Matthew S. Okin
    Texas Bar No. 00784695
    Email: mokin@okinadams.com
    George Y. Niño
    Texas Bar No. 00786456
    Email: gnino@okinadams.com
    David L. Curry, Jr.
    Texas  Bar No. 24065107
    Email: dcurry@okinadams.com
    1113 Vine St. Suite 201
    Houston, TX  77002
    Tel: (713) 228-4100
    Fax: (888) 865-2118

**ATTORNEYS FOR THE PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2015, I filed the foregoing pleading electronically, causing a true and correct copy of the foregoing to be served via the Court's EM/ECF electronic system to all parties consenting to service through same.

By:     /s/ *George Y. Niño*

    George Y. Niño